## 70530. ROBINSON v. THE STATE.
## 70531. McNEALY v. THE STATE.
## 70532. CALHOUN v. THE STATE.
(334 SE2d 358)

CARLEY, Judge.

Certain law enforcement officers were advised by a confidential informant that a certain vehicle containing a quantity of marijuana had been observed. A surveillance of the vehicle was maintained before it was stopped by the agents. Appellant McNealy was driving, appellant Calhoun was in the front passenger seat, and appellant

Robinson and one Dukes were in the rear seat. In the trunk, four pressed bales of marijuana were discovered. All four of the vehicle's occupants were indicted and jointly tried for trafficking in marijuana in violation of OCGA § 16-13-31 (c). The jury returned guilty verdicts against appellants only, who filed separate appeals from the judgments of conviction entered on the guilty verdicts. All three appellants raise only the general grounds by enumeration as error the denial of their respective motions for a directed verdict of acquittal, and their appeals have been consolidated for resolution in this opinion.

1. The evidence adduced at trial insofar as appellant Calhoun is concerned was as follows: On a Tuesday in March of 1984, appellant Calhoun, a resident of Fort Lauderdale, Florida, visited the Metter, Georgia, home of his elderly mother and nephew, the latter of whom is appellant McNealy. Stating that his own automobile was in need of repair, appellant Calhoun borrowed his mother's automobile. Her automobile was generally available for use by a few of her relatives, and it was her automobile in which appellants and the contraband were subsequently discovered. Appellant Calhoun left Metter in his mother's car that day or the following day and drove to Fort Lauderdale, where he picked up appellant Robinson. Appellants Calhoun and Robinson returned to Metter on Thursday, and spent the night. On Friday, appellant McNealy agreed to drive appellants Calhoun and Robinson to Augusta in the car. On the way to Augusta, appellants stopped at the home of Dukes, who joined them for the trip to Augusta. Once in Augusta, the men made several stops, including a stop at a gas station where Calhoun made approximately five phone calls, and two visits to the home of James Brown. Subsequently they were stopped and arrested.

In addition to the marijuana found in the trunk, the agents also discovered in the automobile two jackets and a pistol. Both jackets belonged to appellant Calhoun. In the pocket of one of the jackets was a piece of paper on which was written two columns of numbers. Beside "#1" was written "47," beside "2" was written "47," then "3" and "45," and then "4." Beside that number, the paper was torn, revealing only another "4." On the other side of the paper the number "174" was written. It was stipulated at trial that the total weight of the four bales of marijuana was 174.2 pounds.

Appellant Calhoun contends that since it was undisputed that other individuals had "equal access" to the automobile, the evidence did not authorize a finding that he was in possession of the contraband. See generally *Farmer v. State*, 152 Ga. App. 792 (264 SE2d 235) (1979); OCGA § 16-13-31 (c). However, "[b]ecause the [S]tate did not show the indicia giving rise to the presumption, that is, ownership or exclusive control of the vehicle [at the time of arrest,] no presumption arose and therefore there was no triggering of the equal

access defense." *Castillo v. State*, 166 Ga. App. 817, 822 (305 SE2d 629) (1983). Nonetheless, all of the competent evidence adduced at trial may be considered to show constructive possession, even though no *presumption* of possession arose. See generally *Farmer v. State*, supra at 796-797.

The jury was authorized to find that appellant Calhoun had constructive possession of the marijuana. There was substantially more presented at trial than evidence of Calhoun's mere presence at the scene of the crime. Calhoun had had exclusive control over the automobile for the four days immediately prior to his arrest. Even following his surrender of exclusive control over the automobile when he gave the keys to appellant McNealy on the day of his arrest, appellant Calhoun was present at the automobile at all times until his arrest. Most importantly, the jury could reasonably infer that the paper discovered inside Calhoun's jacket made reference to the four bales of marijuana found in the trunk of the automobile and the total weight of that marijuana. Appellant Calhoun did not offer any explanation for the meaning of the paper or for the purpose of the trips to Augusta and Fort Lauderdale.

" 'To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.' [Cit.]" *Denham v. State*, 144 Ga. App. 373, 374 (241 SE2d 295) (1977). "Questions of reasonableness are generally decided by the jury, and this court will not disturb the jury's finding that the evidence was sufficient to exclude every reasonable hypothesis save that of guilt unless the verdict is unsupportable as a matter of law. [Cits.]" *Shockley v. State*, 166 Ga. App. 182 (303 SE2d 519) (1983). The evidence was sufficient to enable any rational trior of fact to find the existence of the offense charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Anderson v. State*, 166 Ga. App. 459, 460 (3) (304 SE2d 550) (1983).

2. The evidence concerning appellant McNealy was as follows: Appellant McNealy resided with his grandmother, the owner of the automobile in which the contraband was discovered, and was the nephew of appellant Calhoun. When Calhoun and appellant Robinson returned to Metter from Fort Lauderdale on Friday morning, appellant McNealy agreed to drive the two men to Augusta so that appellant Calhoun could take care of "some business" with "somebody." Appellant McNealy took the automobile keys and retained possession of them until appellants were arrested. McNealy got out of the car with Calhoun when they went to Duke's trailer. Appellant McNealy knew James Brown, and also went to the door of James Brown's house. Appellants were stopped and arrested at approximately 4:30 p.m. that afternoon. Appellant McNealy testified at trial, denying any

knowledge of the contraband.

Appellant McNealy also asserts that because others had "equal access" to the automobile, it cannot be inferred as a matter of law that he had constructive possession of the contraband, and that there was no other evidence establishing his possession of the marijuana. " ' "Where immediate and exclusive possession of an automobile, locker room, or other premises is shown, the inference is authorized that the owner of such property is the owner of what is contained therein, and this inference has been referred to as a rebuttable presumption. [Cits.]" *However, "(a)s to automobiles, the rule does not apply where there is evidence in the case that the defendant has not been in possession of the vehicle for a period of time prior to the discovery of the contraband or that others have had access to it. [Cit.]" ' [Cits.]"* (Emphasis in original.) *Farmer v. State,* supra at 795.

In the present case, because appellant McNealy was driving the automobile when the contraband was discovered, an inference was authorized that McNealy had possession of the marijuana discovered in that automobile. We find that there was no evidence that others had "equal access" to the automobile which would make the presumption inapplicable. Although there was evidence that appellant Calhoun and perhaps the other defendants had equal access to the trunk of the automobile, the doctrine does not apply where the defendants are alleged to have joint constructive possession of the contraband. *Castillo v. State,* supra at 822. Moreover, although there was some evidence that relatives had had access to the automobile in the past, because it was shown that only the defendants had access to the automobile for four days prior to the discovery of the large amount of contraband in the trunk, we find that others did not have *"equal access"* to the automobile.

In addition to the presumption that appellant McNealy was in joint constructive possession of the contraband, "[w]here transactions involving relatives are under review slight circumstances are often sufficient to induce a belief that there was collusion between the parties. [Cits.]" *Heard v. State,* 142 Ga. App. 703, 704 (236 SE2d 911) (1977). As previously noted, appellant McNealy was the nephew of appellant Calhoun.

"We must view the evidence in a light most favorable to the verdict and, in doing so, we conclude that the evidence was sufficient to exclude every *reasonable* hypothesis save [appellant McNealy's] guilt and that any rational trier of fact could have found [McNealy] guilty beyond a reasonable doubt. [Cits.]" *Castillo v. State,* supra at 821. *Jackson v. Virginia,* supra.

3. Finally, appellant Robinson raises the general grounds. The evidence shows that appellant Robinson had known appellant Calhoun for several years, and that both were residents of Fort Lauder-

dale. Appellant Robinson testified at trial that one evening Calhoun approached him in a lounge in Fort Lauderdale and asked him to ride up the street to pick up Calhoun's automobile. Appellant Robinson agreed. The two men then drove the car Calhoun had driven to the lounge to Calhoun's home, where, for reasons allegedly unknown to Robinson, the men switched vehicles, taking the automobile in which they were later arrested. Appellant Robinson further testified that after entering the second automobile, he fell asleep immediately. When he awoke, he was in Georgia. He then told Calhoun that he should have been told that they were going to Georgia, and fell back asleep. Although on direct examination Robinson testified that when they reached appellant McNealy's home in Metter, he only got out of the automobile long enough to stretch his legs, on cross-examination he admitted that he and appellant Calhoun spent the night there. Finally, he testified at trial to the following: that during the few days he was with Calhoun, he never asked Calhoun the location of the automobile that they went "up the street" to pick up; that he really never knew where he was, nor what Calhoun wanted him to do; and he did not know of the existence of the marijuana in the trunk.

The trial court charged the jury on parties to a crime and conspiracy. See OCGA §§ 16-4-8; 16-2-20. Conspiracy is a question for the jury. However, there must be some evidence to support its finding. See *Brewer v. State*, 129 Ga. App. 118 (199 SE2d 109) (1973). " ' "(P)resence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." ' [Cit.] 'The evidence offered showed more than mere presence at the scene of the crime. Instead the proof sustained the [S]tate's contention that the defendant[s conspired to commit] the criminal [act.]' [Cits.]" *Hardin v. State*, 172 Ga. App. 232, 233 (322 SE2d 540) (1984). See generally *Mize v. State*, 173 Ga. App. 368 (2) (326 SE2d 785) (1985). Although appellant Robinson offered some explanation for his presence in the automobile when arrested, the jury was authorized to disbelieve that testimony and to infer from his presence and companionship with appellants McNealy and Calhoun that appellant Robinson's intent was to traffick in marijuana. Appellant Robinson was not merely present when the contraband was discovered. He had ridden to Metter, Georgia from Fort Lauderdale with appellant Calhoun, who the jury was authorized to find had constructive possession of the marijuana. He had then spent the night with his two co-defendants and traveled the following day to Augusta. The only explanation offered for his presence in the automobile was that, two days earlier, he thought that he was going "down the street" and had fallen asleep.

The evidence authorized the jury to find beyond a reasonable doubt that appellant Robinson had conspired with appellants Cal-

houn and McNealy to traffick in marijuana. See generally *Lang v. State*, 171 Ga. App. 368, 369 (320 SE2d 185) (1984).

4. Accordingly, we find no error in the denial of appellants' respective motions for a directed verdict of acquittal.

*Judgments affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 4, 1985.

*Leon Larke*, for appellants (case nos. 70530, 70531).
*Michael C. Garrett*, for appellant (case no. 70532).
*Sam B. Sibley, Jr., District Attorney*, for appellee.